ELIAS B. RHEA, Appellant, *v.* JACOB C. RINER, Appellee.

APPEAL FROM KNOX.

In a sale or exchange of personal property, the question of delivery is a fact for the jury.

Replevin may be sustained, where it is understood and intended, that the title to the property should pass without any further act of the parties.

In an exchange of horses, whether the contract was in all respects carried out, as to the condition of the animals, is a question for the jury, and their verdict will not be disturbed, unless under unusual circumstances.

THIS was an action of replevin, commenced in the Knox Circuit Court, to recover one bay mare, claimed by plaintiff, and was tried in that court, before a jury, at the October term, A. D. 1857. Verdict and judgment for plaintiff. Motion for a new trial by defendant overruled.

The declaration was as follows:

First count charges that defendant, on 12th May, 1857, on a certain farm in township 9 N., R. 4 E. of 4th P. M., Knox county, Illinois, took one bay mare, black mane and tail, about eight years old in spring of 1857, sixteen hands high, of the plaintiff, of value of one hundred and fifty dollars, and unjustly and wrongfully detains the same, against sureties, etc.

Second count same as first, but describes a different close, in same township.

Third count same as second, except it charges that defendant " *detained* " instead of " *took* " the mare.

Fourth count same as third, except changes the place, as on his farm, in township 9 N., R. 4 E. 4th P. M., and lays damages at two hundred dollars.

On the 21st day of October, A. D. 1857, at same term of the court, defendant filed his general demurrer to the first count of plaintiff's declaration, and pleas to second, third and fouth counts of said declaration, and assigned as special cause of demurrer, that the place whence mare was alleged to have been taken, was not described with sufficient certainty.

And afterwards, on same day, the court overruled the demurrer to said first count of said declaration, and upon motion of defendant, granted leave to withdraw the demurrer, and plead to

Rhea v. Riner.

said first count, and the said defendant, on the same day, filed his pleas to the first count of said declaration, as follows :

1. Plea to first and second counts of declaration, that defendant did not take, and unlawfully, unjustly and wrongfully detain the said mare.

2. Plea to third and fourth counts of said declaration, that he did not detain the said mare.

3. Plea to whole declaration, property in defendant.

Issue was joined on the first, second and third pleas of defendant.

The plaintiff called a witness, who testified that he knew the parties ; took the mare, Coly, to defendant, last spring ; was told to take her by the plaintiff; left the mare with defendant ; heard him tell his wife that they had traded horses ; some of the hands put the mare in the stable ; defendant turned her out in the field ; she was stiff next morning. Defendant said a week afterwards, that if Coly was as well as she was when they traded, it would be all right ; Coly got over her stiffness by the next Sunday ; told defendant that we came after the mare Jane ; defendant told me, when I left, to tell Rhea, if he did not send the mare up in a week, to come down after her.

Riner said, if the mare Coly did not get over the stiffness, he would not have her ; Coly is brown, Jane is bay.

By another witness, the plaintiff proved that he went down to defendant's after a mare, about a week after Paddock took the mare down ; defendant then had Coly ; he told Riner that he had come after the mare Rhea traded for ; Riner said he had not got done using her ; defendant said Coly had not got over her stiffness ; thought she was going to have the poll-evil, and that under the circumstances, he was not willing to let Jane go.

Another witness stated that Rhea demanded the mare Jane, and Riner told him he did not feel disposed to give her up ; Riner said, if you will take Coly, and say nothing more about it, I will give you five dollars ; Coly was not lame, but a little stiff ; Coly got over her stiffness in about a week after she had a colt ; Riner, the defendant, told plaintiff that if Coly was all right as she was when they traded, it would be all right, and said if Coly got over her stiffness, he would let plaintiff have Jane.

Another witness stated he knew the mare Jane ; sheriff took her on Riner's farm, in Salem township ; I took Coly to Rhea for Mr. Riner, a week before Jane was replevied, and defendant took her up to plaintiff on the same day ; I know when Paddock brought Coly down ; Jane was in defendant's possession up to the time when she was replevied.

Defendant told Paddock the next day after he brought her down, that if Coly did not get over her stiffness, he would not

receive her; defendant told Paddock to tell plaintiff that he would not receive Coly unless she got over her stiffness; defendant, in the absence of plaintiff, told me he was to keep Jane until he got through his plowing, and he did not get through his plowing until after she was replevied, and both parties claimed that if anything happened to either mare, it was to be no trade ; Riner, the defendant, took the mare Coly up to plaintiff second time, and she was put into plaintiff's stable ; it was fourteen days from the time Paddock brought Coly down, to the time that Jane was replevied ; Coly was stiff the day he took her up to Mr. Rhea's, plaintiff's, home ; Coly was very stiff in all her legs, and could hardly walk.

Defendant called witnesses, who testified that they observed that the mare Coly was stiff; defendant said he would not have anything to do with the Coly mare, in the condition she was in ; said the same to Paddock when he brought the mare down to defendant's ; and when Paddock left on that day, defendant sent the same word to plaintiff; Coly was diseased ; heard another conversation between the plaintiff and defendant, at the plaintiff's house, at the time defendant took Coly back to plaintiff, in which conversation, both parties said, if either of the mares got crippled or injured, or anything was the matter with either of them, before they exchanged mares, each of the parties was to bear the loss of the injury to his own mare, and it was to be no trade. ·

The plaintiff then called *John Bell,* who stated that the mare was not stiff when brought back to plaintiff's, or did not notice any stiffness.

The plaintiff then re-called *Obed Rhinehart,* who stated that he could not see as the mare Coly was stiff when brought back.

The plaintiff then re-called *John Kirby,* who stated that he was present at the time mare Coly was brought back ; she did not appear to be stiff.

The plaintiff then recalled *James Paddock,* who stated that he was present at the time mare Coly was brought back ; did not notice as she was stiff.

On cross-examination, stated, that if either mare got injured, it was to be at the risk of the party having the mare, or no trade, or to that effect.

The plaintiff then asked the court to instruct the jury as follows :

1st.  If the jury believe, from the evidence, that the defendant traded the mare replevied to the plaintiff for the Coly mare, and that defendant was to have the use of the mare replevied for a time, and that that time had elapsed before the commencement of this suit, and that the plaintiff demanded the same

before the commencement of this suit, and defendant refused to deliver, they will find the issues for the plaintiff.

2nd. The jury is instructed that if they believe, from the evidence, that the contract for the trade of the horses was, that if the mares either of them became injured before the time expired for which the parties were to use them, that the person in possession of the horse injured should pay the loss occasioned by the injury to the other, and if they believe, from the evidence, that the mare traded to defendant became injured before the time expired, still the proof of those facts does not invalidate the contract, and that the defendant must sue for the loss occasioned by the injury.

Which instructions were given by the court, to the giving of of which the defendant excepted.

The defendant then asked the court to instruct the jury as follows:

1st. If the jury believe, from the evidence, that the defendant was to retain the mare Jane until he got his plowing done, and that if anything happened to either of the mares before the time for delivery, it was not to be a trade, and that the defendant was not done plowing at the time the mare Jane was taken, and that the mare Coly was stiff or lame, they will find for defendant.

2nd. If the jury believe, from the evidence, that the title to the mare was not passed, or it was not to be a trade if anything was the matter with either of the mares, and that the mare Coly was stiff and lame before Jane was to be delivered by the contract, they will find for the defendant.

3rd. If the jury believe, from the evidence, that the defendant was to have the mare Jane to plow with until he got his spring plowing done, and that he had not got his plowing done at the time the sheriff took the mare upon the writ in this suit, and at the time this suit was commenced, and the defendant did not deliver the mare Jane to the plaintiff before the commencement of this suit, the jury will find for the defendant.

4th. If the jury believe, from the evidence, that by the contract between the parties, the possession was not to pass of the mares until the defendant got his plowing done, and that defendant did not get his plowing done before the mare Jane was replevied, and that the possession of Jane was not delivered by defendant to plaintiff, and defendant refused to receive the Coly mare as a trade, the jury will find for the defendant.

5th. That in order for the jury to find the issues for the plaintiff, they must believe, from the evidence, that the mare Jane is the mare described in the declaration and the property of the

plaintiff, and was at the time of the commencement of this suit, and that the plaintiff was entitled to the possession of the mare Jane at the time of the commencement of this suit.

6th. That the jury must believe, from the evidence, that the plaintiff demanded, either by himself or agent, the mare Jane from the defendant after the making of the contract, and before the commencement of this suit, or they will find for the defendant.

7th. If the jury believe, from the evidence, that the parties to this suit contracted to exchange mares the one for the other, and that each was to retain the mare he had before said contract at his own risk for some days after said contract was made, and that said mares were not to be exchanged until some days after said contract was made, and that said plaintiff never had possession of the mare Jane prior to the commencement of this suit, the plaintiff cannot recover in this suit.

8th. The jury are further instructed, that there is a distinction between *a contract for a sale*, and *a sale;* that to constitute a sale of personal property there must be delivery of possession, and that the plaintiff must here show a delivery of the mare Jane to him by the defendant in order to recover in this action.

The court refused to give the 7th and 8th, and refused to give the 1st and 2nd as asked, and gave the 3rd, 4th, 5th, and 6th, as asked by defendant.

To the decision of the court in refusing to give the 1st and 2nd instructions as asked, and refusing to give the 7th and 8th, the defendant excepted.

The court gave the 1st and 2nd instructions asked by the defendant, as modified by the court, which are as follows :

1st. If the jury believe, from the evidence, that the defendant was to retain the mare Jane until he got his plowing done, and that if anything happened to either of the mares before the time for delivery it was not to be a trade, and that the defendant was not done plowing at the time the mare Jane was taken, and that the mare Coly afterwards got hurt or became unsound, they will find for defendant.

2nd. If the jury believe, from the evidence, that the title to the mares was not to pass, or it was not to be a trade if anything was the matter with either of the mares before delivery, and that the mare Coly was *seriously injured* by stiffness or lameness before Jane was to be delivered by the contract, they will find for the defendant.

To the giving of the said instructions, so modified by the court, the defendant excepted.

The cause was then submitted to the jury, who found the issues for the plaintiff, and assessed damages at one cent, to which verdict the defendant then and there excepted.

The defendant then filed a motion for a new trial, which was denied.

DOUGLASS & CRAIG, for Plaintiff in Error.

TYLER & SANFORD, for Defendant in Error.

WALKER, J.   It is urged as ground for a reversal of the judgment below, that as the property replevied was not delivered to the plaintiff below at the time the sale was made, that he could not maintain the action.

At the common law a delivery of possession was not necessary to pass the title to chattels from the vendor to the purchaser. To complete the purchase and vest the title in the buyer, it was only necessary that the terms of the sale should be complete and the property sold specified and separated from other property of the same kind, where it was incapable of identification.   When this was done by the parties the sale was complete and the title to the property became vested in the purchaser.   But the 17th section 29 Car. 2, provides that no sale of goods, wares, or merchandize, for the price of ten pounds sterling or upwards, shall be allowed to be good, except the buyer shall accept part of the goods sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or some memorandum in writing of the bargain shall be signed by the parties to the contract, or by their duly authorized agents. It will be observed that, in our statute of frauds this provision of that act is omitted, and consequently the common law is left in force to that extent.   And if the contract was completed by the parties and nothing remained to be performed except to deliver the property to plaintiff below, and the parties understood and intended that the title to the property should pass without any further act of the parties, then a delivery was not essential to the right to maintain the action.   And what the terms of the contract were, and whether it was consummated by the parties, was a question of fact to be determined from all the surrounding circumstances, and while the evidence is not clear and entirely satisfactory, yet it was sufficient to justify the inference that the contract was complete and the title to the animal in controversy, had vested in the plaintiff.   At the time of the trade, the defendant received and took away with him the animal he got in exchange for his, and by arrangement of the parties was to retain the animal he gave in exchange, for the purpose of plowing, a short time.   It seems from the evidence that he afterwards gave notice to appellee that he would

deliver the animal in a week afterwards, but when the demand was afterwards made he refused to deliver it to appellee.

It is again urged that the exchange of the horses was upon the condition, that if anything happened to either, it was not to be a trade. And that the animal given by appellee did become diseased and that appellant offered to return the property he had received and demanded that given by him, and consequently there was no liability incurred by refusing to deliver the animal he gave in exchange. There was some evidence that the animal given by appellee became stiff soon after the exchange was made, but all the evidence, as well that of the appellant as of the appellee, is that it only lasted a few days. And the evidence conflicts as to whether she was disordered as alleged. Some six witnesses called by appellant testify that when returned and offered to appellee, she was quite stiff, while some five called by appellee as explicitly testify that they saw the animal at the time, and that she was not so diseased. Even granting that a condition was inserted in the contract, that the sale should be rescinded in case either animal became diseased before they were delivered, still whether that event had occurred was a fact to be determined by proof, and it was a question for the jury alone to determine from the evidence. And their finding should not be disturbed unless it is clearly against the evidence, which is not the case in this finding. Nor did the terms of the contract authorize either party to rescind the sale unless the event occurred. It was not enough that he asserted it to be true, but he was bound to establish it by proof. Neither was a trifling, temporary ailment sufficient to authorize a recision of the sale. The true construction of the agreement, contemplates some injury or disease, of such a character as would render the animal less useful or valuable, and not a trifling or natural ailment. There is no pretense but the animal was free from all appearance of disease until after she had her foal, and it may be that the apparent stiffness of this animal resulted from that fact, and if so that was not within the condition of their agreement. We, after examining the whole record, are of the opinion that there is no error in either giving, refusing, or modifying the various instructions asked, and that the evidence sustains the finding of the jury, and that there is no error in the record requiring the reversal of the judgment of the court below. The same is therefore affirmed.

*Judgment affirmed.*