ALVAN ROGERS and others *vs.* WILLIAM P. WHITEHOUSE, Assignee.

Kennebec.   Opinion May 29, 1880.

*Replevin. A condition to a sale of goods to a retail dealer is binding upon him and his assignees, but not upon his vendees in the regular course of business.*

Goods bought by a retail trader upon a condition that the property shall not vest in him until they are paid for, but with an understanding between him and his vendor that they are to go into his store and be sold by him in the regular course of trade, will not pass to his assignee in insolvency, or for the benefit of creditors, although the original vendor would be estopped to deny the title of those who might purchase portions of them of the retailer in the regular course of his business.

It is not essential to the existence and validity of such a condition that the conditional vendor should have no right to sell to others. His assignee takes only such right as he himself could assert in the goods against his vendor, and if he has agreed that the property in the goods shall remain in the vendor until they are paid for, the vendor may replevy them from his assignee although such vendor could not dispute the title of those who had purchased portions of them in good faith and in the regular course of trade from his vendor.

ON EXCEPTIONS.

Replevin for certain goods claimed to have been delivered May

4, 1877, by the plaintiffs, Rogers & Co. to Pope & Sibley, the assignors of the defendant, under the following agreement printed on the bill-head : "Goods sold for cash, only conditionally delivered until paid for."

The assignment to defendant was for the benefit of creditors, and dated June 8, 1877.

Writ was dated June 11, 1877. The verdict was for defendant. The plaintiffs alleged exceptions to the instructions of the presiding judge, which are sufficiently stated in the opinion.

*Orville D. Baker*, for the plaintiffs, cited : *Whitney* v. *Eaton*, 15 Gray, 225 ; *Stone* v. *Perry*, 60 Maine, 48 ; *Hussey* v. *Thornton*, 4 Mass. 405 ; *Barrett* v. *Pritchard*, 2 Pick. 512 ; *Hill et als.* v. *Freeman*, 3 Cush. 257 ; *Tyler* v. *Freeman, Idem*, 261 ; *Blanchard* v. *Child*, 7 Gray, 155 ; *Coggill* v. *R. R. Co.* 3 Gray, 545 ; *Benner* v. *Puffer*, 114 Mass. 376 ; *Tibbetts* v. *Towle*, 12 Maine, 341 ; *Heath* v. *Randall*, 4 Cush. 195 ; *Burbank* v. *Crooker*, 7 Gray, 158.

*G. C. Vose*, for the defendant, submitted without argument.

BARROWS, J. The plaintiffs claim that the crate of crockery ware, the unsold remainder of which they here replevy from the assignee of their vendees was only conditionally sold by them to Pope & Sibley, the defendant's assignors—that there was an understanding between their selling agent and Pope & Sibley, that though the goods were delivered to go into Pope & Sibley's store, and be disposed of by them in the ordinary course of retail trade, the property in them was not to pass until they were paid for. The making of any such arrangement was denied and the testimony is contradictory. If it were certain that the jury found that the plaintiff had failed to prove the existence of such an arrangement, the plaintiffs would have no case.

But, as to the force and effect and legal consequences of such an arrangement, the "jury were instructed in substance among other things, that the position of the plaintiffs was that the title to the goods remained in the plaintiffs, and that Pope & Sibley had no legal title to sell any of them, and could give no legal title to any of them to any purchaser—that there was no evidence that would warrant the conclusion that the plaintiffs constituted

Pope & Sibley their agents, to sell the goods for them—that it was incumbent upon the plaintiffs to show that some special contract was made between the parties, "that the title was to remain in the plaintiffs, until fully paid for, Pope & Sibley having no title, no right to sell to others." If that was established, plaintiffs would have a right to reclaim these goods at any time if payment was not made. And, on the other hand, the jury were instructed that if the real contract was that Pope & Co. were to receive the goods and have such title and right as would authorize them to sell them in the course of their business, as they had occasion to, the vendors undertaking to retain a lien upon the goods for their security, then the title would not be retained by the plaintiffs but would pass to the purchasers, "because selling by one merchant to another with an agreement and understanding between them, that the purchaser is to take such a title as would give him a legal right to sell as he pleased in the course of his business, would be entirely inconsistent with, and repugnant to an agreement that no title was to pass but was to remain in the vendors."

As touching the real character of the transaction, the presiding judge put the following questions to the jury : "Was it one by which no title was to pass to Pope & Co., by which they were to have no legal right to sell the goods? Or was it one understood between the parties to give to them a legal right to sell the goods in their business, as they had occasion from time to time, the plaintiffs undertaking to retain a lien for their security?" And the jury were finally instructed in accordance with the whole tenor of what had gone before, that if they were "satisfied that no title was passed to Pope & Co. then the plaintiffs have a right to maintain this suit. If, however, such a title was passed to them as would authorize them to sell the property as their own as they had occasion in their business, and the plaintiffs merely undertook to retain a lien upon it then they did not do the business in such a way as to give them a legal right to retake the property."

The jury must have understood that if the arrangement between the plaintiffs and Pope & Sibley was such that the latter could

give a good title to their customers purchasing at retail, the title to the goods could not remain in the plaintiffs, and the action could not be maintained against the defendant who took the unsold portion of the crate under the assignment. The logic of the instructions seems to be this. The property in the crockery passed to the vendees by the sale, or it did not. If it passed, so that they could give a good title to any portion of it to their customers at retail, then no title remained in the plaintiffs, and the vendees could dispose of it in any manner they pleased. Now unless the vendees could lawfully dispose of the property in the regular course of their retail business, the transaction was altogether futile; and the jury could not well come to any conclusion under the instructions, except that it was an attempt to retain a lien for the price in a manner which they had been told was repugnant to, and inconsistent with, any right on the part of Pope & Sibley to sell to any one. But we do not think that the case should be made to turn upon the power of Pope & Sibley to give a good title to such articles as they might sell from the crate at retail. Though there had been a distinct and positive and undisputed agreement in writing, between the plaintiffs and their vendees that the property should not pass until paid for, still, if the plaintiffs had delivered it under the circumstances here stated, with the obvious intention and expection that it was to go into Pope & Sibley's store, and be disposed of by them from time to time as their customers called for it, they would be estopped to assert their own title against that given to a *bona fide* purchaser at retail from Pope & Sibley. *Pickering* v. *Busk*, 15 East. 38. But this defendant acquired by the assignment no rights except those which his assignors could have asserted against the plaintiffs. *Goss* v. *Coffin*, 66 Maine, 432; *Hersey* v. *Elliot*, 67 Maine, 527, and cases there cited. *Whitney* v. *Eaton*, 15 Gray, 226. No such estoppel would arise as to him. *Burbank* v. *Crooker*, 7 Gray, 158–159; *Stone* v. *Perry*, 60 Maine, 48. See also, for further discussion of the mode of making, and the effect of these conditional sales, where the title is not to pass from the vendor until payment is made,

*Hussey* v. *Thornton,* 4 Mass. 407; *Hill* v. *Freeman,* 3 Cush. 259;. *Tibbetts* v. *Towle,* 12 Maine, 341.

In the latter case attention is called to the rule that in the case of a conditional·sale, no property passes but subject to the condition; and to the ancient maxim from Shepard's Touchstone, "It is a general rule that when a man hath a thing he may condition with it *as he will.*" We see·no legal objection to a wholesale dealer making a conditional sale to a retailer with the understanding that he may dispose of the goods as they may be called for at retail, but that as between themselves the property shall not pass until the goods are paid for; and in such case while the purchaser at retail would get a title which the original vendor could not impeach because of his agreement with the retailer, it would be the title of the original vendor and not that of the retailer who has none and can convey none except in the manner which his arrangement with the vendor permits. One to whom he sells his whole stock will take no title. *Burbank,* v. *Crooker,* 7 Gray, 158. Neither will his assignee in bankruptcy or insolvency.

The real question here was one for the jury. Was the conditional sale agreed upon between the plaintiffs' agent and Pope? To find that it was, it was not necessary that the jury should also find that Pope & Sibley could give no legal title to any of the goods to any purchaser. If they could, it would not necessarily follow that they could give a legal title to the part remaining unsold to this defendant as their assignee.

*Exceptions sustained.*

APPLETON, C. J., WALTON, DANFORTH, PETERS, LIBBEY and SYMONDS, JJ., concurred.