ABRAHAM, Respondent, vs. KARGER, Appellant.

*August 30 — September 20, 1898.*

*Sale of chattels: When title passes: Replevin against vendor.*

Where the purchase price of goods covered by a contract of sale has been paid or tendered, and the goods have been set apart for delivery and a partial delivery made, the title and right of possession is in the purchaser, and he may maintain replevin against the vendor if the goods are wrongfully detained.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Affirmed.*

For the appellant there was a brief by *Moritz Wittig, Jr.,* of counsel, and *Mock, Riley, Wittig & Schinz,* attorneys, and oral argument by *Moritz Wittig, Jr.*

For the respondent there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Jackson B. Kemper,* of counsel, and oral argument by *Jackson B. Kemper.*

PINNEY, J. This was an action for the recovery of a lot of merchandise stored by the defendant, *Karger*, at No. 559 East Water street, Milwaukee, and in charge of one Bing, a relative of *Karger*, to sell for him on commission. The plaintiff, *Clara Abraham*, was at this time conducting a business under the name of the "Milwaukee Knitting Works." This business was managed for her by her father, Louis Abraham, as her agent, who a few days prior to August 26, 1896, began negotiations with Bing for the purchase of the merchandise belonging to the defendant, *Karger*. These negotiations were in part conducted, according to the evidence of the plaintiff, *Abraham*, in the presence of, and with the sanction of, the defendant, *Karger*. There was a dispute between the witnesses for the plaintiff, on the one side, and the defendant and his witnesses, on the other, as to the terms of sale finally agreed on between the plaintiff and defendant. On the part of the plaintiff, Louis Abraham testified that the agreement as finally made was that the plaintiff was to pay the defendant, *Karger*, for this stock $2,000 in cash, and to deliver to him the note of one W. A. Meyer for $500; and this was corroborated by the evidence of James L. Gates, a witness on the part of the plaintiff, who testified that the defendant, *Karger*, stated to him that such was the case. The testimony of *Karger* and his witnesses was that the plaintiff was to pay to the defendant $2,500 in cash, and that *Karger* did not agree or consent in any way to accept the note of Meyer in payment of part of the consideration; and it appeared that this dispute as to the terms of the sale was the only matter upon which there was any conflict of testimony. On all other points the witnesses substantially agreed.

At the time when the bargain was made, Louis Abraham paid Bing $25 to bind the bargain. The next day the plaintiff, *Abraham*, paid to Bing $1,500, and at the time Bing gave to *Abraham* an invoice or statement, drawn up in Bing's

Abraham vs. Karger.

handwriting, which recites the value of the merchandise at
$4,100, the payment by cash and merchandise in exchange
of $3,100; the balance of $1,000 to be paid, $500 in cash,
and $500 in W. A. Meyer's note. Both Bing and *Abraham*
admit that the purchase price was $2,500, and that no mer-
chandise was given in exchange; that the bill or invoice
was made out this way as a matter of convenience between
the parties. And Bing further claims that the statement
that the balance was to be $500 in cash and $500 in notes
did not express the true understanding between them. Au-
gust 24th, the plaintiff, through Louis Abraham, paid $500
more on the purchase; and, on the 26th of August, Louis
Abraham tendered to the defendant, *Karger*, Meyer's note
for $500, payable to the Milwaukee Knitting Works, and in-
dorsed, " *C. Abraham*, proprietor." This tender was refused,
and *Karger* said to Abraham, "If you don't have the money
before noon, I am going to store the goods, and you will
have to pay the costs;" whereupon the plaintiff, *Clara Abra-
ham*, brought replevin, charging the unlawful and wrongful
detention of the property.

The court, in its charge to the jury, in effect told them
that the question at issue was whether the sale was to be for
cash and notes, as testified to by the plaintiff's witnesses, or
for cash solely, as testified to by the defendant and his wit-
nesses; that if they found the claim of the plaintiff to be
correct, then the verdict should be in favor of the plaintiff;
if they found the facts as to the sale or agreement to be as
claimed by the defendant, then they should find for the de-
fendant. The jury found for the plaintiff, and that she was
the owner of, and entitled to the possession of, the goods
seized under the writ; that the same were unlawfully de-
tained from her by the defendant; that the value of the prop-
erty was $3,500. The plaintiff had judgment against the
defendant for the possession of the property, and for the re-
covery of the costs, together with the damages of six cents.

The defendant asked the court to instruct the jury to find

a verdict in his favor, and also that, under the evidence, the plaintiff could not maintain the action. These requests were denied, and the case was submitted to the jury to find, as already stated, whether the terms of sale were complied with on the part of the plaintiff by the payment to the defendant of the required amount in money, $2,000, and the tender of the stipulated note of Meyer for $500. There was evidence on the part of the plaintiff to maintain these contentions. It is established by the verdict as a verity that payment of the $2,000 in money, and tender of the note of Meyer for $500, were made. Such payment and tender of payment prior to the time of the commencement of the action had the same effect as actual payment upon the rights of the parties. There is nothing to show that the contract was executory, so far as anything remaining to be done to the goods was concerned. The evidence shows that they were ready for delivery, and set apart, and the price agreed upon, and a partial delivery made before the tender of the $500 note. The goods were in the sight of the parties, and were pointed out in the presence of *Karger*, the defendant, when it was agreed that he was to get $2,000 in cash and W. A. Meyer's note for $500 for them. There can be no doubt but that, under the circumstances stated, the title to the goods, and the right of possession as well, passed to the plaintiff, and, if afterwards they were wrongfully detained, she might maintain replevin for them. "When the terms of sale are agreed on, and the bargain is struck, and everything the seller is to do with the goods is complete, the contract of sale becomes absolute as between the parties, without actual payment or delivery, and the property and the risk of accident to the goods vest in the buyer. He is entitled to the goods on payment or tender of the price, and not otherwise, when nothing is said at the sale as to the time of delivery or time of payment. . . . But if the goods are sold upon credit, and nothing is agreed upon as to the time of delivery of the goods, the vendee is immediately entitled to the possession, and the

right of property vests at once in him." 2 Kent, Comm. (14th ed.), *492–*494; *Hatch v. Oil Co.* 100 U. S. 124.

The evidence as to what actually did occur, or what was agreed on between the parties, is in some respects conflicting and contradictory. The case was rightly submitted to the jury to find upon the vital point in dispute and thus determine whether the property and right of possession passed to the plaintiff. The evidence was clearly sufficient to sustain the finding of the jury, and the court could not have properly directed a verdict for the defendant. "Where the property in the goods has passed to the buyer and the contract is executed, . . . he may maintain trover" (21 Am. & Eng. Ency. of Law, 627); or replevin (*Bradley v. Michael*, 1 Ind. 551, 552; *Rhea v. Riner*, 21 Ill. 526).

The defendant presented a number of requests to charge, and has assigned various errors upon other rulings of the court, an examination of which does not disclose that any material error has intervened to the prejudice of the defendant. A discussion of the evidence contained in the printed case would serve no useful purpose.

For these reasons, the judgment of the superior court of Milwaukee county must be affirmed.

*By the Court.*— Judgment is ordered accordingly.