SAMUEL SIMONS *vs.* NORTHEASTERN FINANCE CORPORATION.

Suffolk.   January 7, 1930. — May 26, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Agency*, Existence of relation, Scope of authority.   *Trust*, Trust receipt.
   *Sale*, Conditional.   *Mortgage*, Of personal property.   *Estoppel*.

Statement by CARROLL, J., of the definition of the term "trust receipt"
   as established by this court.
A corporation, desiring to purchase certain automobiles from a second
   corporation for display in its showroom and for resale at retail, made
   an arrangement with the second corporation and a finance corpora-
   tion, the purpose of the first corporation being understood by the
   others, in accordance with which the second corporation sold the auto-
   mobiles to the finance corporation by bill of sale, drew a draft on the
   first corporation for part of the purchase price payable in two instal-
   ments, and, with the finance corporation, received some cash; the
   automobiles then were delivered by the second corporation to the
   first corporation, and the first corporation executed and delivered
   to the finance corporation an instrument called a "trust receipt," in
   which it acknowledged receiving the automobiles from the second
   corporation as agent of and "acting for" the finance corporation,
   agreed to hold them "in trust" for the finance corporation, to which
   it gave the right to examine them at any time and to repossess them
   without notice or demand, and further agreed not to sell, lease or
   encumber them except upon receiving an order or orders from the
   finance corporation and in accordance with such order or orders, and
   to hold the proceeds of a sale, under such an order, in trust and ac-
   count therefor to the finance corporation.   One of the automobiles
   was placed in a show window by the first corporation and sold to a
   customer who knew nothing of the instrument above described.   The
   first corporation afterwards defaulting, the finance corporation took
   possession of such automobile, and the purchaser brought against it
   an action of tort for conversion which was heard by a judge of a
   district court, who found for the defendant, and a report by whom
   was ordered dismissed by an appellate division.   The plaintiff ap-
   pealed.   *Held*, that
      (1) The instrument called a "trust receipt" was not a trust receipt;
      (2) Such instrument was not a contract of conditional sale;
      (3) Not being a party to the instrument, the plaintiff was not
   bound by its terms and was entitled to show what in fact was the true
   relation of the parties to it;
      (4) The first corporation should have been found to have been the
   agent of the finance corporation instead of its trustee;

(5) The plaintiff, not knowing of the limitation in the power of sale given by the finance corporation to its agent, the first corporation, was not bound thereby: the apparent and ostensible powers of the first corporation were its real powers, so far as the plaintiff was concerned;

(6) If the transaction between the first corporation and the defendant amounted to a mortgage, it was not valid as to the plaintiff because not recorded;

(7) The plaintiff was misled to his injury by the conduct of the defendant, which therefore was estopped to rely on its title against the plaintiff;

(8) The order dismissing the report of the trial judge was reversed and the case was remanded to the trial court for assessment of the plaintiff's damages.

TORT for conversion. Writ in the Municipal Court of the City of Boston dated March 4, 1929.

Facts found by the trial judge are stated in the opinion. The plaintiff asked for the following rulings, among others:

"5. That notwithstanding the limitations on right to sell contained in unrecorded trust receipt given by Boulevard Motor Sales Company, the defendant knew that the automobile in question was to be offered for sale by Boulevard Motor Sales Company, that it was exhibited in its salesroom and so offered for sale to the public, in consequence of which it was purchased by the plaintiff of Boulevard Motor Sales Company without knowledge of any claim of title or title in defendant or of any defect in title of plaintiff's vendor, and defendant is thereby estopped from setting up its title, if it has any, against the plaintiff.

"6. That notwithstanding the limitations on right to sell contained in unrecorded trust receipt given by Boulevard Motor Sales Company the officers of defendant agreed with Boulevard Motor Sales Company at and before execution of said trust receipt that said Boulevard Motor Sales Company could sell said automobile and need not account for the proceeds of such sale until settlement was made on accepted draft given in connection with transaction, and said automobile was purchased by plaintiff of said Boulevard Motor Sales Company without knowledge of any claim of title or title of the defendant or that there was any defect in title of plaintiff's vendor, and defendant is

thereby estopped from setting up its title, if it has any, against the plaintiff.

"7. That the defendant, having entrusted the Boulevard Motor Sales Company, a concern dealing in and selling used cars to the public with possession of the automobile in question, and clothing said dealer with ostensible ownership and authority to sell, is estopped from asserting its title as against plaintiff, an innocent purchaser of said automobile who bought it from said Boulevard Motor Sales Company having no knowledge of any defect in its title, or of any claim of title or title in the defendant.

"8. That the defendant having allowed Boulevard Motor Sales Company, a dealer in used cars, to take and retain possession of said automobile and to hold itself out as the owner thereof, is estopped from establishing its title against the plaintiff, an innocent purchaser for value from said Boulevard Motor Sales Company, having no knowledge of any defect in title of his vendor, said Boulevard Motor Sales Company, or of any claim of title or title in defendant."

There was a finding for the defendant. A report to the Appellate Division was ordered dismissed. The plaintiff appealed.

*H. J. Barrett*, for the plaintiff.

*K. C. Tiffin*, (*G. D. Shorey* with him,) for the defendant.

CARROLL, J. The plaintiff was in possession of an automobile which he had purchased under a conditional sale from the Boulevard Motor Sales Company (hereinafter called the Boulevard company). The automobile was taken from him by the defendant. The action is in tort for conversion. In the Municipal Court there was a finding for the defendant. The Appellate Division dismissed the report. The plaintiff appealed.

There was evidence tending to show that the Boulevard company through its representatives interviewed one Shorey, who was president of the defendant and of the New England Velie Company, concerning the purchase of four used motor vehicles belonging to the Velie company. The Boulevard company wanted the cars to sell on its own account and desired to make a cash payment and give notes

for the balance. Shorey did not agree to this, but arranged the plan now to be narrated: The price of $1,700 was agreed on; thereupon the Velie company sold the motor vehicles to the defendant by bill of sale. The Velie company drew a draft on the Boulevard company for $1,000, payable in two instalments on time. The Boulevard company paid the Velie company $600 in cash. Either the defendant or the Velie company already had in its possession $100 belonging to the Boulevard company. The draft, the cash payment and $100 belonging to the Boulevard company made up the total of $1,700, the price of the motor vehicles agreed upon between the defendant and the Boulevard company. The cars were then delivered to the Boulevard company by the Velie company. The defendant took from the Boulevard company an instrument in writing, which in the record is called a "trust receipt." It is signed by the Boulevard company and acknowledges the receipt of the motor vehicles from the Velie company as agent of or "acting for" the defendant; and it contains in addition to the description of the four cars and other provisions not here material the following: "For valuable consideration, Undersigned agrees to hold said motor vehicles in trust as the property of Northeastern Finance Corporation, and to return all or any of them to Northeastern Finance Corporation upon demand. Northeastern Finance Corporation at any time may examine said motor vehicles and the books or records of Undersigned with reference thereto, and may repossess all or any of said motor vehicles without notice or demand, and for such purpose it and its representatives may enter any premises at any time without legal process. Undersigned shall not lend, rent, mortgage, pledge, encumber, operate, use, demonstrate or sell said motor vehicles, except upon a written order or orders to release the same, but may immediately drive them direct to Undersigned's place of storage. Undersigned may sell all or any of said motor vehicles, upon receiving an order or orders duly signed by the Northeastern Finance Corporation, for cash for not less than the sum mentioned in the order or orders to release them from

trust, and immediately after any sale shall deliver the proceeds thereof to Northeastern Finance Corporation, and until delivered shall hold such proceeds in trust for Northeastern Finance Corporation, separate from the funds of Undersigned . . . The acceptance by Undersigned of a time draft in connection herewith or the negotiation or assignment of such draft . . . shall not divest Northeastern Finance Corporation of title to such motor vehicles."

The automobiles were thereafter taken by the Boulevard company to its place of business. The car in question was placed in the window of its showroom and sold to the plaintiff. The Boulevard company defaulted on its payments and the defendant took possession of the vehicle. The plaintiff testified that he saw the automobile in the showroom window of the Boulevard company; that it was sold to him by that company, part of the purchase price being paid in cash "and the balance by note under a conditional sales contract." Shorey testified that he knew the Boulevard company was in the automobile business, "that the purpose in taking the cars in question was to place them in their showroom, in hope of securing purchasers, and to eventually sell the cars."

The instrument in writing between the Boulevard company and the defendant designated by the name "trust receipt," and so called in the record, was in no sense a "trust receipt." That term is applied to an instrument in writing whereby a banker, having advanced money for the purchase of imported merchandise and having taken title in his own name and retaining such title, delivers possession of the merchandise to the importer upon an agreement in writing to hold the merchandise in trust for the banker until he is paid. The only kind of instrument which we have recognized and called a trust receipt is one where the banker at the request of the importer buys goods directly from the foreign seller and takes title in his own name from the foreign seller and then turns the goods which he has thus bought directly in his own name over to the importer upon a trust receipt in order that the latter may carry on his own commercial adventure. *Peoples*

*National Bank* v. *Mulholland,* 228 Mass. 152, 155. *T. D. Downing Co.* v. *Shawmut Corp. of Boston,* 245 Mass. 106, 113, 114. 22 Colum. L. Rev. 395–420, 546–562. See also 34 Harv. Law Rev. 758–760. The essential elements of a trust receipt were lacking in the instrument executed between the defendant and the Boulevard company. The Boulevard company was not an importer and the transaction was one directly between the defendant and the Boulevard company. The written instrument was not a trust receipt.

The instrument was not a conditional sale contract: no price is mentioned, and it is not contemplated by the terms of the instrument that title to the motor vehicle shall vest in the Boulevard company. The purpose of the transaction was to enable the Boulevard company to arrange for a sale of the motor vehicles; and one who is not a party to a written lease, conditional sale contract, or other writing, may show that the real relation between the parties to the instrument was different from that shown in the written instrument. The plaintiff was not a party to this written agreement between the Boulevard company and the defendant, he was not bound by its terms, he could show what in fact was the true relation between the parties. *Spooner* v. *Cummings,* 151 Mass. 313. *Guaranty Security Corp.* v. *Eastern Steamship Co.* 241 Mass. 120. *Tripp* v. *National Shawmut Bank of Boston,* 263 Mass. 505.

The defendant knew that the Boulevard company was in the automobile business and was exhibiting motor vehicles in its showroom for the purpose of sale. The agreement gave the Boulevard company authority to sell upon terms approved by the defendant. On the evidence in the case it should have been found that the Boulevard company was the agent of the defendant. The limited authority in the written agreement to the effect that sales could be made upon the order of the defendant was a secret limitation upon the apparent authority of the Boulevard company and did not bind the plaintiff, who knew nothing about this limitation and was an innocent purchaser for value. The apparent and ostensible powers of the Boulevard company were its real powers, so far as the plaintiff

was concerned. *Brooks* v. *Shaw*, 197 Mass. 376, 379, 380. *American Railway Express Co.* v. *Mohawk Dairy Co.* 250 Mass. 1. *Lewis* v. *Chapin*, 263 Mass. 168, 172. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 518.

The Boulevard company was in the lawful possession of the automobile, under the circumstances already disclosed. The possession of property with the exercise of rights of ownership over it is some evidence of title: it makes out a *prima facie* case. "If testimony is introduced to control it, the whole evidence is considered together to determine the true title." *United Shoe Machinery Co.* v. *Bresnahan Shoe Machinery Co.* 197 Mass. 206, 216. *Silver* v. *Roberts Garage, Inc.* 240 Mass. 571.

If the transaction between the defendant and the Boulevard company amounted to a mortgage, as it was not recorded it was not valid as such against the plaintiff. G. L. c. 255, § 1, as amended by St. 1921, c. 233.

In conclusion it is our opinion that by the circumstances shown here the defendant is estopped to rely upon title in itself against the plaintiff: he has been misled to his injury by the defendant's conduct; the defendant virtually gave the Boulevard company power to mislead the plaintiff to his injury, and the defendant had reasonable cause to know that such consequences would follow. *Boston & Albany Railroad* v. *Reardon*, 226 Mass. 286, 291. The case at bar is distinguishable from *Oliver Ditson Co.* v. *Bates*, 181 Mass. 455, *Royle* v. *Worcester Buick Co.* 243 Mass. 143, *Lynn Morris Plan Co.* v. *Gordon*, 251 Mass. 323, and similar cases.

The order dismissing the report is reversed, and the case remanded to the Municipal Court for the assessment of the plaintiff's damages.

*So ordered.*