DOROTHY B. BECK *vs.* NEW BEDFORD ACCEPTANCE CORPORATION.

DECEMBER 19, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.  This is an action of replevin of a Hudson motor car.  It was tried in the superior court before a jury; and at the conclusion of the evidence a motion by the defendant for the direction of a verdict in its favor was denied and a motion by the plaintiff for a verdict in her favor was granted by the trial justice.  The case is now before us on the defendant's exceptions to these two rulings alone.

60

There is no dispute between the parties as to the material facts, which are as follows. Howland-Ricketson Motor Co., Inc., which will be hereinafter referred to as the Ricketson company, was an established and recognized retail dealer in Hudson motor cars, with an office and showroom in Fall River, Massachusetts. The plaintiff was a resident of Newport in this state, who had owned and driven Hudson cars for a number of years and was interested in buying a new one.

Early in June, 1935 she called at the showroom in Fall River of the Ricketson company, with which she had not previously dealt, and looked at the models then on display, but did not see one which suited her. She, however, talked with Mr. Ricketson, the treasurer of the company, about the purchase of a new car and the kind of a Hudson car which she wanted. After several other interviews, he told her by telephone that he believed that he had a car which she would like and on July 30, 1935 he took to her country home in Rhode Island the new car which is involved in this case and demonstrated it to her. As a result she then and there bought it and received delivery of it, and paid for it in full, partly in cash and partly with her used car.

Earlier in the same day the new car had been purchased by the Ricketson company, on conditional sale from the R. W. Powers Motor Company, hereinafter referred to as the Powers company, which was a wholesale distributor of Hudson cars in the city of Providence. By the express terms of that sale the title was to remain in the seller until the Ricketson company's purchase money note for $741 was paid; and the Ricketson company was given the right to use the car "for storage and/or display purposes only" and was forbidden to use it for demonstration purposes or to transfer any interest in the contract or the property without the written consent of the seller.

At the same time the defendant, an automobile finance corporation, agreed with the Powers company by telephone

to buy the note and conditional sale agreement for the car and they were endorsed over to it, the transaction being completed on August 2, 1935. At the time of the sale to the Ricketson company, both the Powers company and the defendant had notice that the Ricketson company was a retail dealer in Hudson cars and was buying the car for resale.

On May 29, 1936 the Ricketson company defaulted in the payment of its above-mentioned note for $741, after several extensions of time. Soon afterward the defendant looked up the car, found that it was in the possession of the plaintiff, and demanded possession of it from her. A little later, by arrangement between counsel for the parties, the defendant took possession of the car, and the plaintiff retook it in the present action.

Both the conditional sale to the Ricketson company and the sale by it to the plaintiff took place in Rhode Island; and the defendant, when, three days later, it became full legal owner of the conditional sale agreement and note, acquired as to the car no better title against the plaintiff than the Powers company had had. For these reasons it seems clear to us that the case is governed by Rhode Island law and that the decisive question now is whether, under the language of general laws 1923, chapter 306, sec. 7 (1), the Powers company, on August 2, 1935, was by its previous conduct "precluded", as to the plaintiff, from denying the Ricketson company's authority to sell the car to the plaintiff, as it did on July 30, 1935.

The paragraph above cited is as follows: "(1) Subject to the provisions of this title, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

There is no doubt, under the law of this state, that a conditional sale agreement, with a reservation, by the seller, of

the legal title to the article sold, need not be recorded in order to be valid for all purposes; and that the conditional buyer cannot, in the absence of exceptional circumstances requiring a different conclusion, sell the article in violation of the agreement and give valid title even to a *bona fide* purchaser for value and without notice of the conditional seller's title. The question here is whether a different rule applies in a case where the conditional buyer, as the seller has notice, is engaged in the business of selling such articles and is buying the article for resale; and by the terms of the conditional sale, or otherwise by agreement between the parties, the buyer is authorized to place the article with his stock, which is for sale, and to exhibit it, though forbidden to sell it without the written consent of the conditional seller; and the conditional buyer thus places it with his stock and as a part thereof sells it to a *bona fide* purchaser for value, who believes that the one who sells it to him is either the full owner of it or has the right to sell it.

It is our opinion that in such a case, on sound principle and according to the weight of authority, a different rule applies and the purchaser from the dealer gets a title which is valid against the conditional vendor to the dealer. The reason for the different rule in such a case seems to us apparent upon reflection. Thus, if one who is not a dealer in motor cars has one in his possession, of which he claims to be the owner, and he offers to sell it to another, the latter would naturally realize that the former very possibly may have no title or only a conditional title to the car and may have no authority to sell it; and the latter is therefore put on his guard. If the offeree buys under these conditions and he learns later that the seller only held the car under a conditional sale agreement with a third person, who was the legal owner and *has done nothing to throw the last buyer off his guard,* the latter's title is not good against the conditional seller's title. See *Young* v. *R. I. Auto Sales Co., Inc.* 52 R. I. 199, 159 A. 737.

A like rule applies, where the case is similar except that the later claimant is one who claims a lien on a motor car for repair work done on it, at the request of the mortgagor or conditional vendee of it but without the consent of the mortgagee or conditional vendor of it. There the latter's title is superior to the lien. *Providence Buick Co.* v. *Pitts,* 45 R. I. 145, 120 A. 583; *Arnold* v. *Chandler Motors Co.,* 45 R. I. 469, 123 A. 85; *Goldstein* v. *The Mack Motor Truck Co.,* 56 R. I. 1, 183 A. 136.

The situation is to our minds very different, where a wholesale dealer in a certain kind of merchandise sells some articles of that kind to a retail dealer therein, to be resold, and either reserves title by a conditional sale agreement or takes back a chattel mortgage on them, and it is a part of the agreement between the parties that the buyer may place these articles on display with the similar ones which he has for sale, but must not sell them without having first paid to the wholesaler the amount secured by them to the wholesaler. Now suppose that a third person comes into the retailer's store and buys and pays for and takes away some of these goods in the *bona fide* belief that the retailer either is the absolute owner of them or at least has the right to sell them and give good title.

It is our opinion that in such a case the third person, on sound principle and by the great weight of authority, gets a title which is valid against the wholesaler, because the latter by his conduct has precluded himself, as to the third person, from denying that the retailer had at least authority to sell the goods in the ordinary course of his business and to give valid title to the purchaser. As some of the authorities state the matter, the wholesaler has, in such a case, conferred upon the retailer "an apparent authority to sell" and ought to realize that customers of the retailer are likely to be misled thereby, though exercising due care.

This is an old and well-settled distinction and the latter, special rule above stated is well set forth and explained in a

modern case, which applies it to the mortgage and later sale of an automobile. *Boice* v. *Finance & Guaranty Corp.*, 127 Va. 563, 102 S. E. 591. In its opinion the court says at page 570: "It is true that, as a rule, the seller of personal chattels cannot confer upon a purchaser any better title than he himself has, but if the owner stands by and permits a seller, who is a licensed dealer in such goods, to hold himself out to the world as owner, to treat the goods as his own, place them with other similar goods of his own in a public showroom, and offer the same indiscriminately with his own to the public, he will be estopped by his conduct from asserting his ownership against a purchaser for value without notice of his title."

At page 572 of the opinion the court quotes from *Saltus* v. *Everett*, 20 Wendell, 267, at 281, as follows: " 'If a man', says Bayley, J., in *Pickering* v. *Buck*, 15 *East* 44, 'puts goods into another's custody, whose common business it is to sell, he confers an implied authority to sell'; and the cause was decided on that ground. But this implied authority must arise from the natural and obvious interpretation of facts, according to the habits and usages of business; and it never applies where the character and business of the person in possession, do not warrant the reasonable presumption of his being empowered to sell property of that kind. If, therefore, . . . a person intrust his watch to a watchmaker to be repaired, the watchmaker is not exhibited to the world as an owner, or agent, and credit is not given as such, because he has possession of the watch; the owner, therefore, would not be bound by his sale."

In the *Boice* case the court, on the above reasoning, held that the defendant, a holder of recorded mortgages, made by a dealer in automobiles and covering automobiles which, as the defendant had notice at the time when the mortgages were made, were to be placed in the dealer's showroom and thus held out to the public as being for sale, could not, as against a *bona fide* purchaser of one of these automobiles, enforce the mortgage thereon.

In *National Bond & Investment Co.* v. *Shirra*, 255 Ill. App. 415, the defendants, then owning a Peerless sedan, placed it, with other Peerless cars, in the salesroom of the Advance Motor Sales Company, a dealer in Peerless cars, and sold them to that company under conditional sale agreements. Later that company executed a conditional sale agreement selling this car to one of its officers. On the same day it sold and conveyed to the plaintiff this later agreement and the purchase-money note secured thereby. Thereafter, the Advance Motor Sales Company having defaulted under its agreement with the defendants, they seized the car in question and refused to deliver it to the plaintiff, which in consequence brought an action of trover against them. There was testimony for the defendants that when the car was turned over by them to the sales company, there was an understanding between them and that company that the Peerless cars placed in the dealer's salesroom were for display purposes only and were not to be offered for sale. There was no evidence that this understanding or the fact that the car was subject to a conditional sale agreement, retaining title in the defendants, was known to anyone but the parties thereto. The trial of the case resulted in a directed verdict for the plaintiff and this was sustained by the district court of appeal. The supreme court of Illinois afterwards refused to review the decision on *certiorari*.

The district court of appeal held that the case must be determined under the provision of the sales act of that state, which was identical with the section above quoted from the sales act of this state. The court held in substance that the Advance Motor Sales Company, as the defendants knew, was in the business of selling automobiles at retail; that possession of the car had been given to it by the defendants, either for the purpose of selling it or as a sample car; and that, under the circumstances, since the defendants had allowed the dealer to appear to be the owner of the car or to have full power to dispose of it, and the plaintiffs were thus

led into buying the later conditional sale agreement and note, the defendants were precluded by their conduct from disputing the plaintiff's title.

The court cites and follows its previous opinion and decision in *Illinois Bond & Investment Co.* v. *Gardner,* 249 Ill. App. 337. There a company engaged in the business of selling automobiles took an automobile, with the permission of the plaintiff, to its regular place of business and placed it in its display room. It was bought by a purchaser and the plaintiff then claimed it under a trust agreement binding on the dealer and containing a provision that the dealer would not use or demonstrate the automobile, but would drive it directly to its place of business and hold it until it had paid for it. It was held that the plaintiff's claim could not be enforced against the purchaser. The court in the later case quotes with approval from the opinion in the earlier case, at pages 344 and 345, as follows: "A customer going into a retail store and seeing goods on display offered to the public generally for sale, buying such goods, in good faith, should be protected against the holder or owner of any secret lien of which the purchaser has no notice. To hold otherwise would seriously interrupt business."

A similar case, similarly decided, is *Western States Acceptance Corp.* v. *Bank of Italy,* 104 Cal. App. 19, 285 Pac. 340, a review of which was denied by the supreme court of the state. There the plaintiff, holding the legal title to the car in question, had allowed a retail dealer in such cars to display it on the dealer's floor as being for sale but did not authorize it to be used in demonstration, or to be sold except with the plaintiff's written consent, which was never given. It does not appear that the purchaser of the car from the dealer ever saw the car on the dealer's floor, but the court took the view that he naturally assumed that the dealer had it for sale. Therefore the title of the purchaser was sustained against that of the finance company. At page 23 (342 of 285 Pac.) the court says: "The duty rests upon one

financing a retail dealer to see to it that cars upon which he has a lien or other interest are not left under the domain or control of such sale dealer on his salesroom floor, to be offered to the public."

A like rule was applied in *Simons* v. *Northeastern Finance Corp.* 271 Mass. 285, 171 N. E. 643. There, by a written agreement between the defendant finance company and a retail dealer in automobiles known as the Boulevard company, the defendant held title to certain automobiles as security for the payment of $1000 to it by the Boulevard company in two installments, and the latter was to have possession of them and the right to place them in its showroom in the hope of securing purchasers, but not to sell them except on the order of the defendant. It is held that the defendant could not enforce its title to one of these cars against the plaintiff, who had seen it in the showroom window and bought it from the Boulevard company in the regular course of business without notice of the defendant's right.

At page 290 (645 of 171 N. E.) the court says: "The defendant knew that the Boulevard company was in the automobile business and was exhibiting motor vehicles in its showroom for the purpose of sale . . . . The limited authority in the written agreement to the effect that sales could be made upon the order of the defendant was a secret limitation upon the apparent authority of the Boulevard company and did not bind the plaintiff, who knew nothing about this limitation and was an innocent purchaser for value. The apparent and ostensible powers of the Boulevard company were its real powers, so far as the plaintiff was concerned . . . . In conclusion it is our opinion that by the circumstances shown here the defendant is estopped to rely upon title in itself against the plaintiff; he has been misled to his injury by the defendant's conduct; the defendant virtually gave the Boulevard company power to mislead the plaintiff to his injury, and the defendant had reasonable cause to know that such consequences would follow."

Like reasoning was applied and a like result reached in *Denno* v. *Standard Acceptance Corp.*, 277 Mass. 251, 178 N. E. 513, which was similar to the *Simons* case, except that the defendant's claim to the motor car in question was under a recorded chattel mortgage from the Maykel Automobile Company, a retail dealer in such cars. That or other mortgages between the same parties covered other cars. There is nothing to show that the defendant authorized the dealer to sell any car before the mortgage on it was paid, but the dealer was impliedly authorized to display the cars for sale and to demonstrate them. The plaintiff was a *bona fide* purchaser of the car from the dealer.

The court says at page 255 (515 of 178 N. E.): "In the known course of the automobile business, we think a finding that permitting general dealers to exhibit and demonstrate machines gave them apparent authority to make sales, cannot be found erroneous in law." and at page 256 (515 of 178 N. E.): "The defendant is found knowingly to have put the Maykel Automobile Company in a position to mislead the plaintiff with reason to expect purchasers to be misled. Its equities are less than those of the plaintiff. The fact that the specific automobile purchased by the plaintiff was not shown in the wareroom is immaterial." In its opinion the court quoted as pertinent a section of the uniform sales act in Massachusetts that is substantially identical with the section above quoted from the sales act in this state.

In the instant case the defendant contends that it is difficult to reconcile the decision in the *Denno* case with the later decision of the same court in *Marsh* v. *S. M. S. Co.*, 289 Mass. 302, 194 N. E. 97, in which the defendant, a conditional vendor of the car in question, prevailed against a rather remote purchaser of the car. But the distinction seems to us quite obvious, since it did not appear in the later case that the conditional sale was to a dealer at all, and the defendant had not consented to the possession of the car by either of the dealers through whom the plaintiff derived

his title to it. There was no conduct by the defendant which, under the doctrine of the *Simons* and *Denno* cases, would preclude it from denying the authority of any of the later possessors of the car to sell it.

The defendant in the instant case relies also on *Young* v. *R. I. Auto Sales Co., Inc., supra,* as being substantially similar to the *Marsh* case, *supra.* It is substantially similar to that case and on its facts is clearly distinguished from the instant case. The defendant also relies on *Finance & Guaranty Co.* v. *Defiance Motor Truck Co.,* 145 Md. 94, 125 A. 585, where a conditional sale to a dealer was involved and the conditional vendor's title was sustained against that of a *bona fide* purchaser from the dealer. But the decision is not in point, because it was based wholly on the fact that the conditional sale agreement was duly recorded under a statute which made the record actual or constructive notice to third parties of the agreement and its terms. Whether that was a sound basis for the decision is a question not now before us, because in Rhode Island a conditional sale agreement need not be recorded in order to be fully effective and the one now before us was not recorded. In its opinion the Maryland court quotes a passage from *Levi* v. *Booth,* 58 Md. 305, which sets forth excellently the common law rule, under which, if there had been no statute, the court in the later case, it seems to us, would probably have reached an opposite conclusion to that which it did reach.

The defendant in the instant case seems to rely strongly on *Dulmage* v. *Bankers Financial Corp.,* 51 Ont. L. Rep. 433, 67 D. L. R. 594, affirmed on memorandum 51 Ont. L. Rep. 437, 1 D. L. R. (1923) 1185. There the title of a conditional vendor of a motor car was sustained against that of a *bona fide* purchaser of the car from the conditional vendee, which was a retail dealer in cars. In that case the conditional vendor, under a special form of conditional sale agreement, which it called its "wholesale contract form", supplied the dealer with cars for resale, to be kept in the

latter's warehouse until sold. But the car in question was sold by the conditional vendor to the dealer, not under that form of agreement, but under a form of *retail* agreement used for a conditional sale to an ordinary *retail customer, i. e., not for the purpose of resale,* but solely for *operation* by the dealer in its business. It had been so operated for some months before it was sold to the plaintiff, who, for all that appears, knew that it had been so operated.

The court makes it clear that it considers that the case presented a different question from what would have been presented if the car had been one of those which had been supplied to the dealer under the *wholesale* form of agreement and the plaintiff had bought it as a new car from the dealer's warehouse. As to the alleged hardship to the plaintiff, the court says and, we are inclined to think, correctly: "The hardship would be the same if the owner of a repair shop who also dealt in motor cars chose to sell a car left for repairs."

In our opinion the defendant's contention in the instant case is not supported by the Ontario case or by any other case which is cited in the defendant's brief. We find that the rule applicable to conditional sales to dealers, which is supported by sound reasoning and an overwhelming weight of authority, is the rule which is set forth in the following quotation from 1 Williston on Sales, (2d) 768, § 329: "There may be special circumstances in a conditional sale which will estop the original seller from asserting his right against third persons although otherwise he might have done so. Perhaps the commonest of these circumstances is where the conditional sale is made to a buyer who, if not authorized expressly, or by implication, to resell the goods, at least is authorized to put the goods in his stock or otherwise make it seem that the goods are his. Under such circumstances it is clear that the seller cannot reclaim the goods from a *bona fide* purchaser in the ordinary course of business though the contract expressly provided that title should not pass until the price was paid."

We believe that it is this rule which is referred to, in the section above quoted from the sales act of this state, by the words "the buyer acquires no better title to the goods than the seller had, unless the owner of the goods *is by his conduct precluded from denying the seller's authority to sell."* (italics ours)

The defendant contends that this rule does not apply in the instant case, because of the fact that the plaintiff never saw the car in question in the showroom of the Ricketson company and therefore was not misled by the conduct of the Powers company in allowing the Ricketson company thus to display the car as being for sale. That fact certainly prevents the case from being as clear a one for her as it would otherwise be. But, as we have above noted in our discussion of cases supporting the general rule, the same element was present in some of those cases and did not prevent the application of that rule. The defendant also relies on the fact that by the conditional sale agreement the Ricketson company was forbidden to use the car for demonstration. Perhaps that fact prevents the plaintiff's case from being as clear as it would be if that use of the car had been authorized. But we do not believe that it should prevent the rule from applying, any more than it is prevented from applying by the fact that by the terms of the agreement the dealer was forbidden to sell the car, except with the written permission of the Powers company.

Both restraints were secret. The car was put into the possession of the dealer, which was expressly authorized to show it to prospective customers, among its cars displayed for sale; and neither the Powers company nor the defendant reserved or tried to exercise any *effective* restraint over the manner in which the Ricketson company dealt with it. A study of the authorities on this subject has convinced us that the regular and sufficient condition for the application of the rule protecting the *bona fide* retail purchaser for value is that the car was sold by the wholesaler to the retailer with

notice that it was being bought *for the purpose of being resold* to a retail customer. If that condition is present, the application of the rule is not prevented by the fact that the agreement between the conditional seller and the dealer contained a provision that the car must not be resold by the dealer until the amount secured by the conditional sale agreement has been paid or the written consent of the conditional seller to the resale has been obtained. Such a secret limitation upon the resale is not enforceable against a *bona fide* purchaser of the car at retail, without notice of such limitation.

In the instant case the uncontradicted evidence proved that for several years before the conditional sale in question occurred the Powers company had made a great many similar conditional sales of cars to the Ricketson company and that those sales had been similarly financed by the defendant. There can be no doubt that both the Powers company and the defendant had notice that the Ricketson company was buying this car for resale and would try to persuade someone to buy it. Yet neither of the former companies did anything effective to prevent the latter company from posing as being in a position to convey at once good title to a purchaser.

The plaintiff was thus misled into believing that the latter company was in that position and she bought and paid for the car in reliance on that belief. It is our opinion that both the Powers company and the defendant, by their conduct, precluded themselves from denying the Ricketson company's authority to sell the car to the plaintiff as it did; and that therefore the trial justice did not err in directing the jury to return a verdict for the plaintiff or in refusing to direct a verdict for the defendant.

The defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment for the plaintiff on the verdict as directed by the trial justice.

*Burdick, Corcoran & Peckham, William A. Peckham, Alexander G. Teitz,* for plaintiff.

*Hinckley, Allen, Tillinghast & Wheeler, Roger T. Clapp,* for defendant.