## DEAHL v. THOMAS.

### No. 5976.

Court of Civil Appeals of Texas. Amarillo.
Sept. 26, 1949.

Rehearing Denied Oct. 24, 1949.

W. T. Link, Clarendon, for appellant.

J. R. Porter, Clarendon, for appellee.

PITTS, Chief Justice.

■ This is a suit to try title to an automobile and for the possession thereof, filed by appellee, M. B. Thomas, against P. C. Hicks and appellant, Carroll Deahl. It appears that appellant Deahl in his brief seeks to make P. C. Hicks an appellee on appeal and denominates him as an appellee throughout his brief. But the record reveals that Hicks, as a party defendant in the trial court, denies each and every allegation made by appellee as plaintiff but admits as true all the defenses pleaded by his codefendant, Deahl, and that Thomas and Deahl each obtained judgment against Hicks for all they sought, from which judgment Hicks did not appeal. Hicks is not therefore a party before this court in the case on appeal.

Both appellee and appellant are claiming title and a right to possession of the automobile in question. Hicks did not claim title or a right of possession of the same but admitted that he had previously obtained possession of the automobile from appellee but never had obtained title to the same, yet he sold the same to appellant and collected the sale price therefor from appellant.

The case was tried to the court without a jury and judgment was rendered for appellee against both appellant and Hicks and judgment was rendered for appellant as against Hicks for the sum of $3275, the sale price he had paid Hicks for the automobile; the trial court further denied any recovery for appellant on his cross-action as against appellee, from all of which judgment Deahl alone gave notice of appeal and perfected the same.

On or about October 29, 1948, appellee sold for a consideration of $2950 a new 1949 Mercury Club Coupe automobile to P. C. Hicks, a dealer in new automobiles at Clarendon, Donley County, subject to the payment of a draft for $2950 in payment for the automobile drawn by Hicks on a Clarendon bank payable to appellee. Upon taking possession of the automobile at

Clarendon, Hicks sent the draft to appellee at his home in Lemay, Missouri, where it was deposited by appellee, with papers evidencing title to the said automobile attached thereto, in a Missouri bank for collection in due course. On or about October 30, 1948, and before the draft in question had been paid or presented for payment, P. C. Hicks sold the automobile in question to appellant for a consideration of $2150 in cash together with the trade-in value of $1125 on a used motor vehicle, making the total purchase price of $3275 for the new Mercury automobile. Appellant delivered his old automobile to Hicks, paid him the difference and took possession of the new automobile on October 30, 1948, with the understanding that Hicks would furnish to appellant the necessary papers of title to the new Mercury automobile soon thereafter. The draft in question was twice presented in due course to the Clarendon bank for payment in person for collection but was never paid because of insufficient funds on deposit by Hicks to pay the same. Hicks, as a witness at the trial, admitted that the draft had never been paid, that he had never paid appellee for the automobile and was not then able to pay him the purchase price of the automobile. The record reveals, however, that appellee voluntarily gave Hicks credit for $135 on the purchase price as a result of other transactions between the parties, leaving a balance due of $2815. Hicks likewise admitted that he at no time had ever had title to the automobile.

When appellee learned that appellant had possession of the automobile, he sued out a writ of sequestration and repossessed the same from appellant, who replevied it upon a good and sufficient bond and has since held possession of it and been using it. However, at the time of the trial, the automobile had not been registered in Texas but was being operated by appellant only with a dealer's license plate furnished to him by Hicks.

■ While appellant complains in several points of error presented of various irregularities of procedure in the trial court, the controlling issue to be determined is the question of who holds legal title and the right of possession of the automobile. Appellant contends that he is protected under the law of estoppel under the facts in this case. Yet, under his own admissions as a witness, he purchased the automobile upon the promise only of Hicks that the necessary papers of title would be delivered to him later. He inquired about such papers later and Hicks continued to put him off. Neither Hicks nor appellant ever received such papers. There is no evidence even tending to show that appellee concealed or attempted to conceal the title papers to the automobile, or did anything to prevent their inspection by anybody. According to appellant's own testimony he knew legal title to the automobile was not delivered to him when he took possession of it and he made no effort at the time he paid Hicks for the automobile and took possession of it to determine the true ownership of the automobile. Appellant could have ascertained the true ownership of the automobile at the time he paid for it if he had exercised reasonable diligence. Under the record before us, it is our opinion that the law of estoppel does not apply in this case. Holland v. Blanchard, Tex.Civ.App., 262 S.W. 97; Pacific Finance Corporation v. Gilkerson, Tex.Civ. App., 217 S.W.2d 440.

■ Appellant charges that there were defects or irregularities in appellee's title to the automobile. The record reveals that Oakley Motor Company of St. Louis, Missouri, sold and invoiced the automobile new to J. S. Carter in the State of Missouri on October 22, 1948, showing the same to be new and "never titled or registered in any state;" that Carter, by a bill of sale, sold the same to appellee on October 24, 1948; that appellee in the State of Missouri on October 30, 1948, executed a bill of sale to the automobile in favor of P. C. Hicks "free from all encumbrances, except M. B. Thomas holds a purchase price lien on the motor vehicle herein described for the sum of $2950." The last bill of sale mentioned, together with other papers evidencing title to the automobile, were attached by appellee to the draft given to him by Hicks when the draft was sent to the Clarendon bank for collection in due course. Hicks

had nothing to show legal title to the automobile or his right of possession of it when he sold it to appellant. Neither did he give appellant anything to show legal title to or any right of possession by appellant at the time he took possession of the automobile. The record reveals that the chain of legal title held by appellee met the requirements of the laws of the State of Missouri. But, assuming that there may have been defects or irregularities in appellee's title to the automobile, such could not be of any benefit to appellant, who had no title whatever to the automobile and neither did Hicks from whom appellant bought it. Appellant and Hicks each knew he at no time possessed legal title to the automobile. Neither of them could therefore seriously claim to be an innocent purchaser of the same.

■ Section 27 of The Certificate of Title Act, Article 1436—1, Vernon's Annotated Penal Code, requires the procurement of a certificate of title as a condition precedent to the right to transfer a motor vehicle. Section 53 of the same Act provides that "all sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with." Mere possession of property does not warrant an assumption of legal ownership. The rule is well established that one who buys property must at his own peril ascertain the ownership. Seigal v. Warrick, Tex.Civ.App., 214 S.W. 2d 883, and other authorities there cited. It has been held that it is the duty of one who purchases a motor vehicle imported into Texas, to investigate and see that the seller of the same has complied with the Texas Certificate of Title Law. Ball Bros. Trucking Co. v. Sorenson, Tex.Civ.App., 191 S.W.2d 908. Appellant did not make such investigation in this case or any other investigation about ownership of the automobile. He relied wholly on the promise of Hicks to procure the papers later. He was therefore derelict in performing the duty required of him in order to protect his best interest and he acted at his own peril in purchasing the automobile and paying for it merely on the promise of Hicks to furnish title at some later date.

Appellant complains of other matters that may or may not affect the rights of Hicks, his codefendant, but they show no injury done to him. They are therefore overruled.

Appellant further complains because of the trial court's refusal to admit certain testimony, which does not appear to be relevant to the controlling issues in this case.

■ Questions of whether or not the trial court's judgment awards double recovery to appellee and whether or not the said judgment properly protects appellant as against Hicks have been raised, and suggestions have been made that the trial court's judgment be accordingly reformed, if need be, to meet these suggestions. It appears that the judgment contains a provision that awards appellee either possession of the automobile in question or a recovery in lieu thereof of the sum of $2815 with interest thereon and nothing more than one or the other. It further appears that the judgment awards appellant the sum of $3275 with 6% interest thereon from October 30, 1948, together with costs incurred by reason of the cross-action as against P. C. Hicks. It therefore appears that no double recovery can be had on the judgment and that appellant's interests as against Hicks have been properly protected.

■ It must be presumed that the trial court found that the sale of the automobile in question to Hicks was conditioned on the payment of the draft for its purchase price and since the purchase price therefor was not paid by Hicks, the title to the said automobile did not pass out of appellee. There is ample evidence of probative force to support such a finding of the trial court. In support of our disposition made of the controlling issues presented in this case we further cite the following additional authorities: Gregory v. Laird, Tex.Civ.App., 212 S.W.2d 193; 37 Tex.Jur. 478, Section 216, and other authorities there cited.

A careful examination of the record reveals no reversible errors were made. Appellant's points to the contrary are all overruled and the trial court's judgment is affirmed without any reformation.