*Municipal Court of the City of Boston*

No. 332112

## EDWARD J. KEANEY

### v.

## CATHERINE M. McCARTHY

(October 14, 1952)

LEWITON, J. We are met at the onset with a question raised in the interlocutory report as to the authority of the court in a replevin action to permit the intervention, as party defendant, of a corporation claiming to be

the holder of a chattel mortgage covering the replevied article and entitled to immediate possession thereof by reason of a breach of the conditions of the mortgage. The plaintiff claims to be aggrieved by a ruling which permitted such a claimant, Quality Finance Company, to intervene as party defendant.

While the question is not freed from doubt, we believe that the challenged ruling should be affirmed. We have been unable to find any Massachusetts decision on the specific question of intervention of third parties in replevin actions. There are numerous decisions which state and apply the general principles applicable to intervention in other types of proceedings. In such cases it is stated broadly that intervention is permitted upon a showing that the intervenor has a substantial interest in the subject-matter of the original litigation and that he seeks to assert a right superior or antagonistic to some or all of the parties, touching the subject-matter of the litigation. *Check* v. *Kaplan,* 280 Mass. 170, 178, and cc. However, decisions in equity cases are not decisive of permitting intervention in a replevin action. Some opinions in replevin cases tend to preclude such interventions. *Standard Varnish Works* v. *Cushing,* 202 Mass. 576, at 583, quoting from *Whitwell* v. *Wells,* 24 Pick. 25, 32, 33:

" 'The object of a judgment in favor of the defendants should be to place them in the same or as good a situation as they were in when the suit was commenced. More than this, no suitor ought to desire. The defendants never having had possession of the goods, ought not to acquire it by a suit against them. A decree to return the goods to the defendants would be absurd, as they never had possession of them. . . .' "

A third party claiming ownership of replevied property may himself bring a replevin action against the original plaintiff-in-replevin.

*White* v. *Dolliver,* 113 Mass. 400;
*Ilsby* v. *Stubbs,* 5 Mass. 280.

However, we are aware of no holding that a second replevin action is the exclusive possessory remedy of a third party claimant, as the plaintiff in this case argues. As a matter of fact, in the *Standard Varnish* case, cited above,

where the Supreme Judicial Court affirmed an order for the return of replevied property to one of the defendants (a mortgagee) who had not had possession thereof at the commencement of the proceedings, the facts are almost identical with those in the instant case. That case differed from this only in that (a) the mortgagee there was named in the writ as one of the original defendants, and (b) the Court *assumed* that the replevin bond furnished by the plaintiff in the *Standard Varnish* case recited a taking of the property from the joint defendants, and therefore concluded that a return to the defendant mortgagee would be a compliance with the condition of the bond. In our opinion those differences are not decisive.

We see no reason why the rights of all of the interested parties, including the mortgagee claiming the right to immediate possession of the replevied automobile, should not be determined in a single proceeding, as was done in the *Standard Varnish* case. This conclusion is entirely consistent with the modern trend to permit the adjudication of conflicting rights of all interested parties, so far as practicable, in a single proceeding.

> *Check* v. *Kaplan,* 280 Mass. 170, 178;
>
> *Standard Varnish Works* v. *Cushing,* 202 Mass. 576;
>
> *Braman* v. *Wall,* 210 Minn. 548, 299 N.W. 243, 246;
>
> M. G. L., c. 231, §§ 4A, 40, 41.

Our holding is also in accord with decisions reached in numerous other jurisdictions, in which the right of a third party to intervene in a replevin action has been expressly upheld.

> *Winchester* v. *Bryant,* 65 Ark, 116;
> *Rieck* v. *Barsema,* 320 Ill. App. 682;
> *Newton* v. *Round,* 109 Iowa 286;
> *Welborn* v. *Eskey,* 25 Neb. 195;
> *Redmon* v. *Ray,* 123 N.C. 502;
> *Inventions Corp.* v. *Slease,* 159 N. Y. S. 548;
> *Arzinger* v. *Baughman,* 348 Pa. 84;
> Cooby, REPLEVIN (2d Ed.) 444, 789;
> Wells, REPLEVIN (2d Ed.) p. 536.

[51]

Turning to the merits, the only question presented by the report is whether the trial judge was correct in ruling that the evidence would "warrant a finding that the plaintiff's conduct or his relations concerning the motor vehicle would estop him from asserting ownership." The challenged ruling was correct.

The facts which could have been found at the trial may be summarized as follows: In December of 1950 the plaintiff purchased the automobile in question, for cash, from a reputable dealer in Dorchester. He registered the car in his own name for the balance of that year and for the year 1951. In March, 1951, the plaintiff enlisted in the army, and at about that time his automobile insurance was cancelled for failure to pay premiums, and the number plates on his car were turned in to the Registrar of Motor Vehicles. Subsequently, the plaintiff had several conversations with his sister, the defendant McCarthy (hereinafter referred to as the defendant), and her husband with respect to registering the car in her name. As a result, the plaintiff and the defendant's husband went together on July 16, 1951, to the office of an insurance broker and there they made out an application for registration of the motor vehicle in the name of the defendant. This application described the defendant as the sole owner of the automobile, and stated that she purchased it from the plaintiff on July 12, 1951. From the office of the insurance broker, the plaintiff and the defendant's husband then went to the Registry of Motor Vehicles in Boston, and procured the registration of the automobile on the basis of the aforementioned application. They obtained the registration plates which the plaintiff and the defendant's husband attached to the automobile in question. The plaintiff kept possession of the car for a few days, until he had to return to his army base, and at that time he gave the car and the keys thereof to the defendant's husband. On July 25, 1951, the defendant's husband applied for a loan on the car at the offices of Quality Finance Company, the intervening defendant. An employee of the company checked personal property mortgage records in Quincy, Boston and Brookline, and found no record of any prior mortgages. He inquired at the Registry of Motor Vehicles and learned that the auto-

mobile was registered in the name of the defendant, and that the application for registration showed the car to have been acquired by her from the plaintiff. From the aforementioned automobile dealer, the finance company received information that the plaintiff had purchased the car for cash. Relying upon representations of the defendant's ownership of the car, as buttressed by the information obtained from the aforementioned investigation, a representative of the defendant company went to the home of the defendant, obtained her signature to a note and a mortgage covering this car, and loaned her $1000.

The plaintiff having deliberately clothed the defendant with the indicia of ownership of the automobile for his own convenience, he should not be permitted to thrust the burden of his sister's breach of trust, if any, upon the innocent third party who loaned money to her in reliance upon her apparent ownership. The defendant finance company could be found to have acted reasonably in making the loan to the defendant and in taking from her the mortgage on this automobile. The statement in the registration that she owned the automobile as an individual was evidence that she was in fact the sole owner of the vehicle.

> *Landrigan* v. *M.T.A.*, 1952 Mass. Adv. Sh. 561-563;
> *Rolfe* v. *Walsh*, 318 Mass. 733, 737;
> *Burns* v. *Winchell*, 305 Mass. 276;
> *Sanjean* v. *Hyman*, 302 Mass. 224, 226.

From the foregoing facts and the inferences which might properly be drawn therefrom, the trial judge could properly conclude that the plaintiff should be estopped to deny the defendant was the owner of the automobile at the time she obtained the loan and executed the mortgage in favor of the finance company.

> *Denno* v. *Standard Acceptance Corp.*, 277 Mass. 251, 256;
> *Simons* v. *Northeastern Finance Corp.*, 271 Mass. 285, 291;
> *Loring* v. *Goodhue*, 259 Mass. 495, 497-8;
> *Calkins* v. *Wire Hardware Co.*, 267 Mass. 52, 69;

*Silver* v. *Roberts Garage, Inc.,* 240 Mass. 571,
574;

*Russell* v. *American Bell Tel. Co.,* 180 Mass. 467.

This case is distinguishable on its facts from the case of *Royle* v. *Worcester Buick Co.,* 243 Mass. 143.

The doctrine of estoppel is not inapplicable here merely because the officers of the finance company might have ascertained, by making additional inquiries, that the defendant did not in fact have lawful title to the automobile.

*Loring* v. *Goodhue,* 259 Mass. 495, 498;

*Elm Farm Foods Co.* v. *Cifrino,* 1952 Mass. Adv.
Sh. 391, 397, and cases there cited;

*Denno* v. *Standard Acceptance Corp.,* 277 Mass.
251, 255.

Reports dismissed.

Frank J. Rogers, Francis X. Cuddy, for the plaintiff.

Arthur A. Karp, for the defendant.