282 P.2d 833

Joe **HEASTON** and H. R. Ellis, a partnership, d/b/a Heaston Ellis Motor Company, Respondents,

v.

Manuel **MARTINEZ**, Appellant.

Jack **LAYTON** and Marian Layton, a partnership, d/b/a Denver Auto Auction, Respondents,

v.

Kay **CLARK**, Appellant.

Nos. 8228, 8238.

Supreme Court of Utah.

April 26, 1955.

No. 8228

Louis H. Callister, Nathan J. Fullmer, Salt Lake City, for appellant.

H. D. Lowry, Salt Lake City, for respondent.

No. 8238

Chris Praggastis, John E. Stone, Salt Lake City, for appellant.

H. D. Lowry, Salt Lake City, for respondent.

COWLEY, District Judge.

Two cases in replevin brought by the respective plaintiffs-respondents, to recover a Pontiac automobile in the one case and a Buick automobile in the other. Plaintiffs recovered judgment in the lower court and defendants-appellants, appeal. The cases were tried separately but were combined for argument on appeal as the facts are similar and the questions of law identical, the sole issue being one of estoppel.

The parties submitted their respective cases to the trial court, sitting without a jury, upon written stipulated facts. Without narrating the stipulated facts we shall point out such material facts as are pertinent to the questions of law and issue involved on this appeal. The respective plaintiffs are wholesale automobile dealers in Alberquerque, New Mexico and Denver, Colorado. On March 3, 1953, the respective plaintiffs sold several automobiles including the Pontiac and Buick in question at their respective places of business to one M. R. Bruce of Salt Lake City, Utah doing business as Ra Don Auto Sales, a licensed used car dealer in said city. Respective plaintiffs transferred possession of the automobiles to Bruce in New Mexico and Colorado knowing that Bruce was a used car dealer and intended to take the automobiles to his place of business in Salt Lake City, Utah for purpose of resale. Upon instructions of Bruce a sight draft was drawn on him in the one case and a three day draft in the other case, payable to the plaintiffs respectively and forwarded to the First National Bank of Murray, Utah. The foreign certificates of title showing respective plaintiffs to be the legal owners were attached to the drafts as security for payment, and Bruce was to receive the certificates of title when he honored and paid the drafts. Bruce orally agreed to pay the draft and thereby obtain the title certificate before he offered the Pontiac for resale in the one case, and in

the other case while there was no such oral agreement it is clear from the stipulated facts that the same was intended by the parties. Bruce transported the automobiles to Salt Lake City and placed them on his used car lot.

About a month later Bruce sold the automobiles in question to the respective defendants at his place of business in Salt Lake City and in the usual course of trade for a valuable consideration. Bruce transferred possession of the Pontiac and Buick to the respective defendants and furnished them with stickers which permitted them to drive said cars for a period of 10 days pending issuance of Utah license plates. Defendants made no inquiry of Bruce as to the title certificates, or Bruce's authority to sell, and had no notice or knowledge of the draft arrangement between plaintiffs and Bruce, or of any defect in Bruce's title to said automobiles.

Bruce never paid the drafts and consequently never received the certificates of title. The certificates of title and drafts were returned to the respective plaintiffs by the bank, and subsequently plaintiffs located the cars in Salt Lake and brought these replevin actions, which was the first notice defendants had of plaintiffs claims.

Defendants resisted the actions on the grounds that they were innocent purchasers for value without notice of plaintiffs claims to the respective automobiles and therefore plaintiffs should be estopped to assert their titles as against them.

The trial court, separate judges sitting in each case, ruled that plaintiffs were not so estopped and entered judgment in their favor. Defendants appeal.

From the above facts the sole issue is whether the respective plaintiffs are estopped to assert their titles to the automobiles in question as against the defendants who purchased the cars in good faith for value from a licensed used car dealer in the regular course of business, to whom plaintiffs sold them, reserving title but granting possession, knowing that said car dealer would resell said cars.

Two Utah cases involving "new" automobiles where an estoppel was found, Jones v. Commercial Investment Trust, 1924, 64 Utah 151, 228 P. 896; and Harrison v. Auto Securities Co., 1927, 70 Utah 11, 257 P. 677, 57 A.L.R. 388, are not directly in point and we are called upon for the first time to determine the application of the Utah sales and Motor Vehicle Acts to our fact situation where foreign "used" cars are brought into this state for purpose of resale and have not previously been registered under our Motor Vehicle Act.

It is a general principle of law that no one can transfer better title to personal property than he has, unless some element of estoppel comes into operation against the person claiming under what would otherwise be the better title. 24 R.C.L. 373. This general principle of law and the possibility of estoppel operating against the owner of personal property

due to some conduct on his part is recognized by a provision of the Uniform Sales Act, Title 60, Chapter 2, Section 7, Utah Code Annotated 1953.

. "60–2–7. Sale by a person not the owner. —(1) Subject to the provisions of this title, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.*"

Defendants contend the italicized portion of the above section of the Sales Act should apply to the facts of these cases to work an estoppel against the plaintiffs, and rely primarily upon cases from Illinois, Oklahoma, and Mississippi involving the sale of used cars which have similar factual situations as the two cases at bar, L. B. Motors, Inc., v. Prichard, 1940, 303 Ill.App. 318, 25 N.E.2d 129; Al's Auto Sales v. Moskowitz, 1950, 203 Okl. 611, 224 P.2d 588; Garrett v. Hunter, Miss., 1950, 48 So.2d 871. These three cases hold in effect that where first dealer turns automobile over to second dealer for purpose of resale, the first dealer retaining title until price is paid, is estopped to assert his title as against an innocent purchaser for value from the second dealer, without knowledge that first dealer had retained title until purchase price was paid. See also Beck v. New Bedford . Acceptance Corp., 1938, 62 R.I. 58, 3 A.2d 55 cited also by defendants.

Plaintiffs in the cases at bar argue that the general rule that one cannot transfer better title to goods than he himself has should apply in these cases for the reason that plaintiffs only transferred to Bruce mere possession of the cars here involved without any accompanying indicia of title, 24 R.C.L. 375. Although plaintiffs gave to Bruce no written indicia of title, nevertheless, where, as here, plaintiffs as experienced wholesale used car distributors, willingly turned the automobiles over to Bruce, knowing that he was a licensed used car retail dealer and would take the automobiles directly to his place of business in Salt Lake City for the purpose of resale, and there place them with other stock, is in our opinion the granting of more than mere possession. Such conduct on the part of the original sellers, plaintiffs, we believe, clothed Bruce with an apparent ownership or authority to sell said cars in the ordinary course of business to the buying public which will preclude the original sellers from reclaiming the automobiles from bona fide purchasers. "Where one of two innocent parties must suffer through the act or negligence of a third person, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetrate the wrong or cause the loss", Al's Auto Sales v. Moskowitz [203 Okl. 611, 224 P.2d 591]; Harrison v. Auto Securities Co., above.

We conclude that plaintiffs are estopped to assert their titles to the automobiles in

question under Section 60-2-7 of the Sales Act unless the defendants as innocent purchasers for value without actual notice of plaintiffs retention of title, are nevertheless, charged with notice under the Utah Motor Vehicle Act and therefore are not bona fide purchasers.

Plaintiffs contend that when these defendants purchased said cars, that since they did not see or obtain certificates of title they were put on notice that Bruce may not have been the owner of these cars or had the authority to sell them, and therefore cannot be considered bona fide purchasers.

Plaintiffs rely upon Title 41, Chapter 1, Section 72, U.C.A.1953, which provides as follows:

"41-1-72. Necessary before transfer complete.—Until the department shall have issued such new certificate of registration and certificate of ownership, delivery of any vehicle *required to be registered* shall be deemed not to have been made and title thereto shall be deemed not to have passed, and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose * * *."

The Mississippi case, Garrett v. Hunter, above cited does not discuss or make applicable a Motor Vehicle Act, however the Illinois case, L. B. Motors v. Prichard, above, and the Oklahoma case, Al's Auto Sales v. Moskowitz, above, both hold that their Motor Vehicle Codes are anti-theft acts only and therefore not applicable in those cases. However, the Utah Supreme Court has gone farther and held that the Utah Motor Vehicle Act is some evidence of title and provide a flag or warning to prospective buyers, much as do the registry acts relative to real estate or chattel mortgages, such as would put prospective buyers on notice and require them to make inquiry, Jackson v. James, 1939, 97 Utah 41, 89 P.2d 235; Swartz v. White, 1932, 80 Utah 150, 13 P.2d 643. This is the position taken by the plaintiffs. Based upon this reasoning and the two Utah cases above cited, plaintiffs contend that defendants were at least required to make inquiry of Bruce as to the ownership and title certificates at time of purchase of their respective automobiles, and because they did not do so, plaintiffs say their failure so to do precludes them from being bona fide purchasers.

In support of this contention plaintiffs cite a Texas case, Deahl v. Thomas, Tex. Civ.App., 1949, 224 S.W.2d 293, which is favorable to their position under the Texas Motor Vehicle Code. In this case the court held that the buyer of an automobile imported into Texas has the duty to investigate and determine whether seller has complied with Texas certificate of title law, which he did not do. The Texas dealer who sold the automobile was required to procure a certificate of title on the imported car under one section of the Texas Motor Vehicle Code as a condition precedent to transfer of title, which was not done, and the sale therefore was void under another section of the Texas Vehicle Code. The

original out-of-state seller was not estopped to assert his title against the buyer, who acted at his own peril in purchasing the automobile without ascertaining the true ownership of the said automobile.

Defendants, on the other hand, contend that Section 72 of the Utah Motor Vehicle Act, or any provisions thereof, or the Act itself, is not appliable to a foreign used car brought into this state for purpose of resale and which has never been registered in Utah, and rely upon Section 65 of said Act which provides as far as material as follows:

"41–1–65. Transfers to dealers.— When the transferee of a vehicle is a dealer who holds the same for resale * * *, the transferee shall not be required to obtain transfer of registration of such vehicle or forward the certificates of title and registration to the department, but such transferee upon transferring his title * * * to another person shall execute and acknowledge an assignment and warranty of title upon the certificate of title and deliver the same and the certificate of registration *to the person to whom such transfer is made."*

▮ Under Section 65 above quoted the Buick and Pontiac automobiles here involved were not required to be registered in Bruce's name, neither was he required to forward to the "department" the foreign certificates of title and registration. The two foreign cars in question which had never before been registered in Utah, were not required to be registered in this state until after the sales of said automobiles were completed to these defendants by Bruce, and not prior. Therefore, the Utah Motor Vehicle Act was not applicable to the fact situation of these cases at bar, defendants were not put on notice under said Act requiring them to make inquiry, but had the right to assume that Bruce was the owner or had the authority to sell said cars, so defendants are innocent purchasers for value without notice and therefore bona fide. It will be noted that Section 72 does not apply to all vehicles but only those *required to be registered.* For the same result under the California Motor Vehicle Code involving a foreign used car see Siegel v. Bayless, 1952, 113 Cal.App.2d 661, 248 P.2d 968. The Texas Motor Vehicle Code is dissimilar to ours.

Judgments reversed. Costs to Defendants.

WADE and WORTHEN, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent. The main opinion invokes Title 41–1–72, a statute requiring registration before title passes, as a sort of "warning to buyers," statute, something akin to the recording acts, pointing out that the buyer is put on inquiry in those cases where the statute applies. It then reasons that because the statute is inapplicable in this case, the buyer here can acquire good title from one who has no title. This is like saying

that if there is no statute putting one on notice against thieves, then one may acquire good title from a thief, such that the true owner cannot assert his title. Title 41–1–72 has no place in this case since it applies to some other situation, and its injection here only confuses.

The same is true of Title 41–1–65, invoked by the main opinion. That section simply sanctions a short-cut transfer by a dealer who is a *transferee*. The majority opinion assumes two non-existent facts in this case: (1) that Bruce was a transferee and (2) that Bruce had title. The true owner specifically refused to (1) make Bruce a transferee or (2) make him an owner, by retaining title and all evidence of ownership save bare possession. Hence Title 41–1–65 has no place in this case since it applies to some other situation, and its injection here, also only confuses.

The same is true of Title 60–2–7, invoked by the main opinion, and without which the majority opinion could not survive. By using 60–2–7 to arrive at its conclusion, the majority opinion lapses into the biggest fallacy of all. Title 60–2–7 specifically states that the dealer here could not pass any better title than he had (which was none), unless the owner, by his conduct, was "precluded from denying the seller's (dealer's) authority to sell." The main opinion says the owner in this case is so precluded by his conduct, and in arriving at such conclusion, succumbs to its own circuitous and erroneous reasoning: The majority opinion says that the owner granted Bruce more than *mere possession because plaintiff, as a wholesale distributor, willingly turned the car over to Bruce, knowing he was a licensed dealer and would take the car to Salt Lake for resale and place it with other stock.* The opinion then says: "Such conduct on the part of * * * plaintiffs * * * clothed Bruce with an apparent ownership or authority to sell said cars in the ordinary course of business to the buying public which will preclude the original sellers from reclaiming the automobiles from bona fide purchasers." The majority opinion uses the italicized portions to establish indicia of ownership *beyond* mere possession,—the language implying that mere possession would not be sufficient indicia of ownership to protect the buyer. The big fallacy that the majority opinion, in stressing the italicized portions above, erroneously indulges, is that it makes the test of what constitutes indicia of ownership, facts such as the roles of the owner in business and things that are in *his* mind,—things which a prospective buyer could not possibly see, or feel, or hear. The question that must be asked and answered to test whether the owner has given another such indicia of ownership as would preclude him from asserting his title as against an innocent purchaser ignorant of the facts, is: What has the owner given to the seller which makes it appear *to the buyer* that the seller is authorized to sell?

Indicia of ownership amounting to a representation upon which an estoppel might be bottomed, is determined by looking at the facts through the eyes of a reasonable buyer, who reasonably can believe the seller has authority to sell,—not through the eyes of the owner. In this case it could not possibly appear to the buyer that the owner was a wholesale distributor, or that the owner willingly turned the car over to Bruce, or that the owner knew Bruce would put it in stock for the purpose of re-sale. The *only* tangible thing the buyer could see here was plain, ordinary naked possession,—nothing else, and the decision in this case must therefore stand for the unheard of proposition that one who permits another to have possession of the former's personal property, cannot assert his title as against a vendee of the latter who is ignorant of the facts. Had the owner here given the dealer (Bruce) the documents of title, then there would have been a real indicia of ownership and 60–2–7 easily could apply, since in such event, a real representation would have been made, as was not the case here, upon which a true estoppel could be predicated.

To hold, as the majority opinion must do, after the window dressing is eliminated, that one cannot assert title against an innocent purchaser from one to whom the owner delivered bare possession of his personal property, makes hazardous the leaving of one's car to be parked for a fee, leaving it for necessary repairs, or even loaning it to a dear friend. I am unaware of any case that has gone as far as this case, and I respectfully suggest that it is ignoring fundamental concepts relating to property and rights therein.

McDONOUGH, Chief Justice (dissenting).

I concur in the dissent of Mr. Justice Henriod. I desire, however, to emphasize certain facts in the instant case, since I am convinced that the record reveals that the respective owners of the cars involved did nothing more than surrender possession thereof to a person who was known to the owner to be in the business of selling used cars. As pointed out in the prevailing opinion, Bruce, the used car dealer, orally agreed to pay the draft and thereby obtain the title certificate before he offered the Pontiac for re-sale in the one case, and in the other case, while there was no such oral agreement, it is clear from the stipulated facts that the same was intended by the parties. I am of the opinion that the better reasoned cases hold that entrusting possession of goods to one who habitually sells such goods does not, without more, create an estoppel. See Williston on Sales, Rev.Ed., Sec. 314, and cases there cited.

The judgment of the trial court should be affirmed in each case.

CROCKETT, J., having disqualified himself did not participate herein.